### Case No. 4,459.

### In re EMISON.

[2 N. B. R. 595 (Quarto, 179);[1] 1 Chi. Leg. News, 342.]

District Court, D. Kentucky. May 10, 1869.

### Case No. 4,460.

### The EMMA.

[See Case No. 18,218.]

### Case No. 4,461.

### The EMMA.

[Blatchf. Pr. Cas. 561.][1]

District Court, S. D. New York. Oct., 1863.

BETTS, District Judge. This vessel and cargo were captured at sea by the steamer

---

[1] [Reprinted from 2 N. B. R. 595 (Quarto, 179), by permission.]

[1] [Reported by Samuel Blatchford, Esq.]

Arago, employed as a transport in the service of the United States, but not a commissioned ship-of-war, July 24, 1863, and were sent into this port, where the prize was libelled in this court, for condemnation. Such ratification of the arrest of the prize was equivalent to an original seizure by authority of the government, and the affirmance of the capture by the United States is authenticated by instituting this suit thereon. 2 Wheat. [15 U. S.] Append. notes, p. 7. The monition and attachment issued in the suit were duly returned in court August 18, 1863, with the usual proclamation. Thomas Sterling Begbie, of London, appeared, on such return, and filed his claim as owner of the vessel and cargo named in the libel, without exception of form to the regularity of the action. The cause was submitted by the United States attorney to the decision of the court, during the present term, upon the proofs produced therein, no party appearing in defence to the action and issue on the pleadings.

The master of the vessel testifies, on his examination in preparatorio, that he took possession of the Emma at Glasgow, Scotland; that he declined to answer who put her into his possession; that she was captured in the Gulf Stream, off the coast of North Carolina, he supposes, for blockade running; that he, the witness, made no resistance to the capture, but exerted himself to escape from it; that part of the crew came on board the Emma in Glasgow, and part in Nassau, Bermuda; that the voyage was from the Bermudas, and was to have ended there; that the cargo on board at the time of capture was turpentine, resin, tobacco, and cotton, put on board at Wilmington. North Carolina, about the middle of July, 1863; that he sailed from Glasgow to Nassau, and from Nassau to Wilmington; that he, the witness, declined to answer who owned the vessel; that the owner lived in England; that he, the witness, does not know the owner of the cargo; that he has no papers of any kind in his possession in relation to the vessel or cargo; that the vessel was captured near the coast of North Carolina, July 24, near 11 o'clock a. m.; that she had regular papers on board when she left Wilmington; that he burned them all on being chased, and when upon the point of being captured, to prevent their falling into the hands of the captors; that he knew that Wilmington was blockaded when he entered the port; that he evaded the blockade in going in, and was captured soon after leaving, on his way out; that he had known all about the war for many months; that his vessel entered the harbor of Wilmington covertly and secretly, whilst that port was under blockade, and sailed from it as before stated by him; and that he loses £1,000 in consequence of the capture, which was to have been his remuneration had he succeeded in completing his voyage.

The first mate concurs, in general, in the facts stated by the master. He says that he heard the latter say that he had destroyed the ship's papers, but he, the witness, did not see it done; and that the Emma had succeeded in running the blockade of Wilmington four several times.

The second officer of the vessel gives no testimony contradictory to the evidence of his fellow officers. He asserts no fact respecting this voyage, criminating the conduct of the vessel or of the parties prosecuting it. He says that he knows that the vessel had run the blockade of the same port at another time.

The steward of the vessel, on his examination, deposed to the same effect with the first and second officers of the vessel. To the 12th and 24th interrogatories he says: "She (the vessel) had run the blockade from Nassau and Bermuda into Wilmington, four times." To the 21st interrogatory he says: "I knew all about the blockade, and so did the captain."

No papers were captured with the vessel and produced in court with the prize and the witnesses taken on board.

This recapitulation of the proof demonstrates that the case is one of premeditated violation of public law, and that the vessel and cargo are plainly subject to judgment of condemnation and forfeiture. A decree will be entered accordingly.